# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| ALBERT ARROYO, | : | CIVIL ACTION NO. 3:CV-16-0933 |
| --- | --- | --- |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| GERALD E. WALTON, et al., | : | |
| Defendants | : | |

## MEMORANDUM

## I. Background

Plaintiff, an inmate confined in the Smithfield State Correctional Institution, Huntingdon ("SCI-Smithfield), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. The named Defendants are Correctional Officer Gerald E. Walton and John and Robert Doe.

Presently before the Court is a motion dismiss, filed on behalf of Defendant Walton. (Doc. 13). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion to dismiss will be granted.

## II. Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir.2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we

"determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir.2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed Appx. 183 (3d Cir.2008).

### III. Allegations in Plaintiff's Complaint.

On February 17, 2016, Plaintiff states that he "was being escorted to the Medical Department in the Dauphin County Prison by Defendant Gerald E. Walton while walking with Defendant Walton to the Medical Department, the Plaintiff was talking to another prisoner when out of no were (sic), Defendant Walton told the Plaintiff to close his dame mouth, and then made a racial statement to the Plaintiff

3

that the Plaintiff needs to go back to this own country." (Doc. 1, complaint at 2). He claims that he "told Defendant Walton that he was in his country, then Defendant Walton started to push and then to assault the Plaintiff by hitting and kicking the Plaintiff in the face and body" and "the Plaintiff tried to cover his face and body up to try and stop Defendant Walton from assaulting him." Id. He alleges that "the next thing the Plaintiff knew their was other Correctional Officers running up to assault the Plaintiff" and "the other Defendants picked the Plaintiff up out of the Dauphin County Prison hallway and was holding the Plaintiff's hands and arms, then Defendant Walton started to punch the Plaintiff in the face and head with a close fist, then the Plaintiff was taken to the Dauphin County Medical Department for the injuries that was caused by Defendant Walton, John Doe and Robert Doe, which to this day because of the Defendants' actions of cruel and unusual punishment the Plaintiff still have a lot of nightmares." Id.

Plaintiff states that "after the treatment that the Plaintiff had received from the Medical Department, one of the staff members from medical told the Plaintiff that they need to take pictures of the Plaintiff's face and body." Id. Plaintiff claims that "Defendant Walton tried to prevent the medical staff from taking the pictures but the medical staff informed Defendant Walton that it was a part of the policy of the Dauphin County Prison to document all injuries of those who are

incarcerated in the county prison." Id. Plaintiff was then taken to the Restricted Housing Unit. Id.

On February 17, 2016, Plaintiff states that Defendant Walton "issued the Plaintiff an institutional incident, claiming a lot of false institutional charges against the Plaintiff." Id.

On February 19, 2016, Plaintiff states that he was interviewed by Correctional Officer Brian Walborn "who informed the Plaintiff the he was assigned to investigate the incident that had happen on February 17, 2016 against the Plaintiff and Defendant Walton." Id. Plaintiff explained that "Walton had called the Plaintiff a racial name then just started beating the Plaintiff for no reason at all." Id.

On February 29, 2016, Plaintiff had an institutional disciplinary hearing, where he claims he was disciplined to thirty (30) days in the Restricted Housing Unit. Id.

On March 20, 2016, Plaintiff states the he was "transferred back to the Pennsylvania Department of Corrections, to SCI-Camp Hill, where the prison administration had question the Plaintiff about the injuries to the Plaintiff's face." Id.

On May 18, 2016, Plaintiff filed the instant action, seeking compensatory

5

and punitive damages. Id.

## IV. Discussion

In pertinent part, the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Under the PLRA, exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 126 S.Ct. 2378 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001) ( "[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 126 S.Ct. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

This court in the past has taken judicial notice of Dauphin County Prison's grievance procedures. Funk v. DeRose, 2012 WL 6966712, at *8 (M.D. Pa. Nov. 28, 2012) report and recommendation adopted, 2013 WL 393868 (Jan. 31, 2013); see also Shakuur v. Costello, 230 Fed.Appx. 199, 201 (3d Cir. 2007)(taking judicial notice of Philadelphia Prison System's grievance procedures). This court has explained the Dauphin County grievance procedure as follows:

> The grievance appeal process that Dauphin County Prison inmates are required to follow, as set forth in the Inmate Handbook, involves four (4) steps: (1) the submission of a grievance for review and determination by the Warden; (2) an appeal of any decision to the Chairman of the Dauphin County Prison Board of Inspectors; (3) an appeal of the Chairman's decision to the full Dauphin County Prison Board of Inspectors; and (4) an appeal from the Prison Board's decision to the Dauphin County Solicitor.

Sawyers v. Brown, 2014 WL 407337, at *2 (M.D. Pa. Feb. 3, 2014). The burden of demonstrating exhaustion rests with Arroyo. See Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000). Plaintiff admits on the face of his complaint that he failed to

7

exhaust his claims. (See Doc. 1). Specifically, Plaintiff states that he did file a grievance, but that he "did not get a response back because he was transferred to a state institution." Id. The Court finds this argument unpersuasive.

The United States Court of Appeals for the Third Circuit has found that transfer to another facility does not excuse the PLRA's exhaustion requirement. See Williamson v. Wexford Health Sources, Inc., 131 Fed. Appx. 888, 890 (3d Cir.2005) (affirming grant of summary judgment for failure to exhaust against plaintiff where plaintiff was transferred to a different prison after filing administrative claim, which plaintiff did not appeal). The Court further notes that an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. See Oliver v. Moore, 145 Fed. Appx. 731 (3d Cir.2005). Therefore, any claims Arroyo would make regarding his failure to exhaust, such as confinement in segregation, lack of property or transfer to a different institution would not excuse his exhaustion. As such, he has failed to exhaust his administrative remedies prior to bringing his action and his action will be dismissed.[1] See Ahmed v. Dragovich, 297 F.3d 201,

---

[1] Although not joined in Defendant Walton's motion to dismiss, Defendants (continued...)

209, 210 (3d Cir. 2002)(Holding that exhaustion requires completion of the entire administrative-remedy process prior to filing suit)(emphasis added). A separate Order will be issued.

Dated: May 30, 2017                    /s/ William J. Nealon
                                       **United States District Judge**

---

[1](...continued)
John and Robert Doe are also entitled to dismissal for Plaintiff's failure to exhaust administrative remedies. See 28 U.S.C. § 1915(e)(2)(B).